FORT WORTH AND RIO GRANDE RAILWAY COMPANY v. F. M. HUDGENS.

Decided May 12, 1906.

**1.—Railways—Killing Stock—Stock Law.**

A railway company is not liable, in the absence of gross negligence, for the value of stock killed or injured by its locomotives in a precinct where the stock law is in force, nor does the burden rest upon the employes of the company to keep a lookout for stock in such cases.

**2.—Charge—Contributory Negligence.**

Where the facts alleged as constituting contributory negligence are un-disputed it was misleading for the court to charge that the burden of proof was upon the defendant to establish its plea of contributory negligence.

**3.—Charge—No Issue.**

Where there was no evidence that the road was fenced, nor that the place of killing was at a crossing, nor within switch limits, it was error for the court to charge the jury that when the killing occurred at a place not a street or road crossing or switch limits or where the right of way was not fenced, then proof of the accident is negligence per se.

Appeal from the County Court of Erath County. Tried below before Hon. M. J. Thompson.

*Martin & George,* for appellant.

*Nugent & Carter,* for appellee.

CONNER, CHIEF JUSTICE.—This case was tried in the County Court of Erath County on appeal from a Justice's Court and resulted in a judgment for appellee, for the sum of $140. It was alleged as grounds of recovery that the engine and cars of the appellant company killed two of appellee's horses. Appellant pleaded the general denial and specially that if appellee's animals were killed as alleged, it was within commissioner's precinct number 1 of Erath County, where the stock law was in force prohibiting animals from running at large, and that appellee was guilty of contributory negligence in permitting his said animals to remain loose and range upon the railway track.

In the fifth paragraph of the charge, the jury were instructed that each and every railway company is liable to the owner, for the value of all stock killed or injured by its locomotives and cars, and in the ninth paragraph they were instructed that it was the duty of appellant to keep a lookout and to use diligence to prevent injuring or killing such stock as should pass upon the railroad, and that a failure to do so would be negligence as defined in the charge. In so charging we think the court committed error under the facts of this case. Appellee testified that he voluntarily turned his horses loose the night before. It was also undisputed, and the court so charged the jury, that the killing occurred within a commissioner's precinct where the stock law was in force and where it was forbidden that stock should be permitted to run at large. It is now well established that in such cases railway companies in the absence of negligence are not liable for the value of stock killed, nor in such cases does the burden rest upon the employes of the railway company to keep a lookout for stock. Say our Supreme Court in the case of Railway Company v. Cocke, 64 Texas, 157: "If there be a valid ordinance of a city, or a statute, in force at the time and place where the injury occurs, by which the running at large of animals is made unlawful, then the entry of the animals upon a railway track or other uninclosed land is a trespass. In such case, a railway company will not be responsible to owners for injury done by its cars to animals entering upon its track, unless the conduct of its employes amounts to gross negligence as heretofore defined; for under such circumstances railway

companies are entitled to presume that all persons will comply with the law which forbids the owner to permit his animals to run at large; hence, are excused from the exercise of that care which will not be necessary if the owner complies with the law—are excused from the exercise of such care as they would exercise were it lawful for animals to be at large and therefore expected to be so," and, further, if stock unlawfully "enter upon a railway track, it is enough that the employes of the company use such care, after the danger becomes known, as a prudent man would, under the same circumstances, to avoid injury." See also Houston & T. C. R. R. Co. v. Jones, 40 S. W. Rep., 745; International & G. N. Ry. v. Dunham, 68 Texas, 232; Houston & T. C. Ry. Co v. Atlas Press Brick Works, 10 Texas Ct. Rep., 677; Missouri, K. & T. Ry. Co. of Texas v. Tolbert, 90 S. W. Rep., 508. It is well settled by these authorities that under the circumstances of this case no duty or diligence on the part of the operatives of the train in question to avoid injuring appellee's horses arose until after their discovery upon the track and until after a reasonably prudent man in the exercise of ordinary care would have seen that they would not get off of the track. The proof without dispute shows that the horses in question were killed very early in the morning. There seems to be some controversy in the testimony as to whether it was then sufficiently light to plainly discern objects at any considerable distance, although appellee's witnesses testify to the effect that it. was. The track approaching the point where the animals were killed was straight for about one-half mile; the tracks of the horses show that they got upon the road about one hundred yards before being struck and that no warning signal was given. The fireman testified that he was putting coal in the engine until his attention was attracted by the engineer applying the brakes, at which time he looked up and within about twenty feet of the front of the engine saw the animal first struck. The engineer testified that he was running some twenty-five or thirty miles per hour on schedule time; that it was about five o'clock in the morning; that when he first discovered the animals they were running as if to cross to the other side of the track, and but a short distance in front of them, a distance so short as to render it impossible for him to stop in time to avoid the injury; that he did not sound a warning because he did not have time to do so. The evidence of these witnesses plainly raised the inference that they at least exercised ordinary care after having discovered the horses upon the track.

The facts stated seem also to render objectionable the second paragraph of the court's charge wherein the jury were instructed that the burden of proof was upon the defendant to establish its plea of contributory negligence. The plea consisted alone of allegations setting up the existence of the stock law and of appellee permitting his horses to run at large. These facts were, as stated, undisputed and the. instruction noted inapplicable.

The error above noted in giving in charge the stock statute (Rev. Stats., 4528) making railway companies liable to the owner irrespective of negligence for the value of stock killed, and emphasized by a special instruction given by the court in answer to a question of the jury after their retirement, namely: "Do the laws of Texas require the right of way to be fenced at the place of accident? (Signed) T. C. Robertson,

Foreman." To which the court answered by giving the following written instruction: "Gentlemen of the Jury, in answer to the question submitted to the court through your foreman, I give you as part of the law in this case the following; the statute does not require the railroad company to fence its right of way. If, however, an accident occurs on the railroad where the right of way was fenced by the railroad company, the burden is then on the plaintiff to show gross negligence. Where an accident occurs, if the same is not at a street crossing, public road crossing or within the switch limits of any depot yards, and the right of way is not fenced then proof of the accident is negligence *per se*, or within itself." It is not suggested in the evidence that the road was fenced or that the place of killing was at a crossing or within the yard or switch limits, and the concluding part of the charge made proof of the accident alone sufficient proof of negligence.

As a counter proposition to all of appellant's assignments, appellee contends in effect that inasmuch as gross negligence was alleged, charged, submitted, and found by the jury, that "errors in the court's charge on immaterial matters which could have no controlling effect in the case are harmless, and the judgment should be affirmed." We think it, however, apparent that the contention fails to answer the objections pointed out.

The judgment is accordingly reversed and the cause remanded for the errors noted.

*Reversed and remanded.*