FT. WORTH & D. C. RY. CO. v. DECATUR COTTON SEED OIL CO. (No. 8213.)

(Court of Civil Appeals of Texas. Ft. Worth. July 3, 1915.)

1. RAILROADS ⊂⊃411—FENCES—STATUTE.
Vernon's Sayles' Ann. Civ. St. 1914, art. 6603, declaring that every railroad company shall be liable to the owner for the value of all stock killed or injured by the locomotives and cars of such company in running over their respective railways, that such liability shall exist in counties which adopt the stock law, prohibiting the running at large of domestic ani-

mals, but that if the railroad right of way is fenced, the company shall be liable only for injuries resulting from a want of ordinary care, has no application to the switchyards and station grounds, where the fencing of the tracks would endanger the safety of the railroad company's employés in coupling and uncoupling cars.
[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1409–1450; Dec. Dig. ⊂⊃411.]

2. ANIMALS ⊂⊃50—STOCK LAWS—VIOLATION.
Where cattle escaped from the owner's inclosure through no fault of his, he was not guilty of a violation of the stock law prohibiting the running at large of animals.
[Ed. Note.—For other cases, see Animals, Cent. Dig. §§ 148–157; Dec. Dig. ⊂⊃50.]

3. RAILROADS ⊂⊃447—INJURIES TO ANIMALS ON TRACKS—ACTIONS—INSTRUCTIONS.
In an action against a railroad company for the killing of cattle, the company contended that the cattle were either killed at a public crossing or while in its switchyards, which, under Vernon's Sayles' Ann. Civ. St. 1914, art. 6603, need not be fenced. The accident occurred within the limits of a town whose ordinances forbade the running at large of domestic animals, and the stock law was also in force therein. The jury were charged that if the cattle were not running at large with the consent and knowledge of the owner, then judgment should be against the railroad company. Held, that the charge was erroneous in allowing a verdict against the company, though the injury might have occurred on the public road, or in the yards, which need not have been fenced.
[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1642–1650; Dec. Dig. ⊂⊃447.]

4. TRIAL ⊂⊃296—INSTRUCTIONS—CURE OF ERRORS.
Where an instruction, purporting to generally define the rights of the parties, omits defenses, the fact that other instructions present those defenses will not cure the error.
[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–713, 715, 716, 718; Dec. Dig. ⊂⊃296.]

5. RAILROADS ⊂⊃415—INJURIES TO ANIMALS ON TRACKS—ORDINANCES.
Where a municipal ordinance, prohibiting the running at large of domestic animals, is enforced, a railroad company is under no obligation to keep a lookout for trespassing animals on its tracks in a switchyard which is not, by statute, required to be fenced.
[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1476–1482; Dec. Dig. ⊂⊃415.]

6. TRIAL ⊂⊃250—INJURIES TO ANIMALS ON TRACKS—ACTIONS—INSTRUCTIONS.
A charge on the duty of a railroad company to give the crossing signals prescribed by Vernon's Sayles' Ann. Civ. St. 1914, art. 6564, is not appropriate in an action for the killing of cattle, unless they were killed on a crossing.
[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 584–586; Dec. Dig. ⊂⊃250.]

7. RAILROADS ⊂⊃442—INJURIES TO CATTLE—ACTIONS—EVIDENCE.
In an action for the killing of cattle on railroad tracks, evidence as to where they were struck, based on the evidences found on the ground, is admissible.
[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1596–1607; Dec. Dig. ⊂⊃442.]

8. APPEAL AND ERROR ⊂⊃1050 — REVIEW — HARMLESS ERROR.
The admission of testimony as to whether a railroad track was fenced at a point other

than the place of the accident is harmless, in an action for the killing of cattle.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. 🕮1050.]

9. TRIAL 🕮253—INJURIES TO CATTLE—ACTIONS—INSTRUCTIONS.

Where a railroad company claimed that the cattle were killed either on a public crossing or in its switchyards, which were not required to be fenced, a charge that verdict should be for plaintiff if the place of the accident was not fenced, unless it was within defendant's switch limits, is subject to criticism, as tending to exclude the defense that the cattle were struck on the public road.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. 🕮253.]

10. RAILROADS 🕮447—INJURIES TO CATTLE—ACTIONS—INSTRUCTIONS.

In an action for the killing of plaintiff's cattle, a charge that if defendant was not required to fence its tracks at the place where the cattle were hit, verdict should be for it, unless its agents and employés failed to use, in operating the train, such care as persons of ordinary prudence would have exercised, is too general in its terms, because it would permit the jury to construe as negligence the failure of the operatives of the train to keep a lookout for cattle, or to give signals to frighten them in the event of their presence, though the accident happened at a place where the tracks were not required to be fenced.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1642–1650; Dec. Dig. 🕮447.]

11. TRIAL 🕮251 — INSTRUCTIONS—APPLICABILITY TO ISSUES.

A requested charge that there was no evidence showing the train was being run at excessive speed is properly refused, in an action for killing cattle, where excessive speed was not made a basis of recovery.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. 🕮251.]

Appeal from Wise County Court; E. M. Allison, Judge.

Action by the Decatur Cotton Seed Oil Company against the Ft. Worth & Denver City Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Thompson & Barwise, of Ft. Worth, and McMurray & Gettys, of Decatur, for appellant. L. D. Ratliff, R. F. Spencer, Jr., and W. C. Shults, all of Decatur, for appellee.

DUNKLIN, J. Four head of cattle belonging to the Decatur Cotton Seed Oil Company escaped from its feed pens near its oil mill in the town of Decatur at night, and, as a result of being struck by a train of the Ft. Worth & Denver City Railway Company within the corporate limits of the town, and at a point where the railway was not fenced, two of them were killed outright, and the other two were so badly injured that they afterwards died. The owner instituted this suit against the railway company to recover damages for the value of the animals, and from a judgment in favor of the plaintiff, the defendant has appealed.

In its amended original petition plaintiff predicated its claim for damages upon allegations of negligence in the excessive speed of the train, in violation of an ordinance of the city of Decatur, in a failure of the operatives of the train to keep a proper lookout for the animals and in failing to ring the bell and blow the whistle, as required by law. In its answer defendant denied the allegations of negligence referred to, and further pleaded negligence on the part of the plaintiff in permitting the cattle to escape from the pens and wander upon the track. Defendant further alleged that the accident occurred within its switch limits in the town of Decatur, at a place regularly used by its employés in coupling and uncoupling cars; that the track was not fenced at that place, and defendant was not required by law to fence the same, by reason of the fact that so to do would endanger and impede its employés in the performance of the services necessary to couple and uncouple the cars. Defendant also alleged that the cattle were killed at a public road crossing, and denied that it was guilty of any of the negligence charged in the petition. By a supplemental petition plaintiff denied that the accident happened at a public road crossing, or within defendant's switch limits, and specially alleged that at the place of the accident the defendant was required by law to fence its right of way.

There was evidence tending to support the defendant's allegation that the cattle were struck on a public road crossing, and the further allegation that if not at such crossing, then they were struck within the defendant's switch limits in the town of Decatur, where it was necessary to leave the track unfenced in order to enable its employés to couple and uncouple cars with safety and without obstruction. Plaintiff introduced evidence tending to negative those allegations.. According to testimony offered by the plaintiff, the cattle were killed north of the public road crossing.

Upon the issue whether or not in approaching said public road crossing the statutory signals required of locomotives were given in the manner prescribed, the evidence was conflicting.

It was agreed by counsel for both parties upon the trial that at the time of the accident Decatur was a duly incorporated town, having then in full force and effect a city ordinance prohibiting cattle from running at large within its corporate limits, and prescribing a penalty against owners, or those having the cattle in charge, for permitting them to run at large in violation of that ordinance; that said ordinance was, at the time in question, being enforced by the officers of the city of Decatur, and that the place of accident was within the corporate limits of said town.

[1–4] As amended in the year 1905, article

6603, Vernon's Sayles' Texas Civil Statutes, reads:

"Each and every railroad company shall be liable to the owner for the value of all stock killed or injured by the locomotives and cars of such railroad company in running over their respective railways, which may be recovered by suit before any court having competent jurisdiction of the amount. Such liability shall also exist in counties and subdivisions of counties which adopt the stock law prohibiting the running at large of horses, mules, jacks, jennets and cattle; provided, however, that in all cases, if the railroad company fence its road, it shall only be liable for injury resulting from a want of ordinary care."

Before being amended the original article did not contain the provision—

"such liability shall also exist in counties and subdivisions of counties which adopt the stock law prohibiting the running at large of horses, mules, jacks, jennets and cattle."

While the statute quoted does not, in specific terms, require the railroad company to fence its track, it is usually referred to in the decisions as having that effect, since, in the absence of a compliance with that statute, the railway company is held liable as an insurer against loss for the killing of cattle upon its track by its trains. According to the well-established rule of our decisions, that statute has no application within the switch limits of a railway company at and around its stations, where the fencing of the track would endanger the safety of its employés in coupling and uncoupling cars, and would impede their movements in performing that service. See Tex. Cen. R. R. Co. v. Hico Oil Mill, 126 S. W. 628; I. & G. N. Ry. Co. v. Cocke, 64 Tex. 151; I. & G. N. Ry. Co. v. Dunham, 68 Tex. 231, 4 S. W. 472, 2 Am. St. Rep. 484.

According to evidence offered by the plaintiff, the cattle escaped from the inclosure through no fault on the part of the owner. In Texas & Pacific Ry. Co. v. Webb, 102 Tex. 210, 114 S. W. 1171, it was held that under such circumstances the owner would not be guilty of a violation of the stock law prohibiting the running at large of animals in districts which had adopted the stock law. Upon the trial of the present suit the following instruction was given the jury by the court:

"Now, if you find and believe from the evidence that said cattle were running at large in the city of Decatur, Tex., in violation of a city ordinance of the city of Decatur, Tex., prohibiting cattle from running at large, with the knowledge and consent of the plaintiff, and in violation of said city ordinance, then you will find for the defendant. On the other hand, if you find and believe from the evidence that said cattle were not running at large with the knowledge and consent of the plaintiff, then in that event you will find for the plaintiff."

Error has been assigned to the latter portion of that instruction, in effect, that if the cattle were not running at large with the knowledge and consent of the plaintiff, then a verdict should be returned in plaintiff's favor. One of the criticisms presented to that instruction is, in effect, that it excluded all other defenses to the suit save and except the one that plaintiff violated an ordinance of the city of Decatur by permitting its cattle to run at large. We are of the opinion that this assignment should be sustained for the reasons stated in the objection thereto just noted. If the animals were struck upon a public road crossing, or at a place within the switch limits of the defendant company where the safety of its employés required the track to be unfenced, then article 6603 of the statutes, quoted above, would have no application, and in order to entitle plaintiff to a recovery, it would be necessary for it to sustain some of the allegations of negligence shown in its petition. And it is no answer to this assignment that those defenses were submitted in other portions of the charge, since it cannot be determined which of the conflicting instructions was observed by the jury. S. K. Ry. Co. v. Sage, 98 Tex. 438, 84 S. W. 814; Burgher v. Floore, 174 S. W. 819, by our Supreme Court.

[5] Another paragraph of the court's charge reads:

"Should you find and believe from the evidence that the track at said place was not required to be fenced, but further find that defendant's agents and employés did not use such care in keeping a lookout ahead of the train, and blow the whistle and ring the bell, as a person of ordinary prudence would have done under the same or such circumstances, and that such failure, if any, was the proximate cause of the striking of said cattle, killing and causing the same to be killed, then you will find for the plaintiff."

One of the criticisms presented to this charge is that as the cattle were trespassers upon the track within the corporate limits of the city of Decatur in violation of the city ordinance, the operatives of the train had the right to assume that the animals would not be at large upon the track in violation of that ordinance, and it owed no duty to keep a lookout for the purpose of discovering whether or not the cattle were on the track, or to blow the whistle or ring the bell in order to frighten them away before their presence was discovered. By another assignment appellant complains of the refusal of its requested instruction No. 3, presenting that theory of the law. As noted already, it was agreed upon the trial that the ordinance had been enforced, and we have been cited to no evidence in the record tending to show that cattle might reasonably be expected upon the track at the time in controversy. Under those circumstances we are of the opinion that, if at the place where the accident happened, the railway company was not required to fence its track, then it owed no duty to keep a lookout to discover the presence of the animals upon the track, or to give signals to frighten them away upon the supposition that they might be there, but without any knowledge of that fact, and that the extent of the liability of the company under such circumstances would be for negligence in failing to avoid injuring the cattle after their presence upon or

near the track had been discovered, as presented in the requested instruction last referred to. See F. W. & R. G. Ry. Co. v. Hudgens, 43 Tex. Civ. App. 201, 94 S. W. 378; M., K. & T. Ry. Co. v. Byrd, 124 S. W. 738; I. & G. N. Ry. Co. v. Cocke, 64 Tex. 157; Railway Co. v. Dunham, 68 Tex. 231, 4 S. W. 472, 2 Am. St. Rep. 484.

[6] The court gave in charge to the jury the provision contained in article 6564, Vernon's Sayles' Texas Civ. Stat., relative to the duty of railway companies in approaching a public road or street to ring the bell and blow the whistle at least 80 rods before the locomotive reaches the crossing. In no event would that instruction be applicable unless the cattle were killed on the public crossing, and, if applicable at all in the present suit, its force might be overcome by the contributory negligence, if any, on the part of the plaintiff in permitting its cattle to run at large in violation of the ordinance of the city of Decatur.

[7] There was no reversible error in permitting the witness Moss to testify where the cattle were struck, as complained in the first assignment. While it is true that he did not see them when they were injured, yet he based those answers upon the evidences found upon the ground, which, if true, would leave no' doubt as to where the cattle were struck.

[8] While the testimony of the witness Grover Oats, which was to the effect that the right of way north of the depot is fenced up to the switches, may not have been admissible over the objection that it was irrelevant, the accident having happened south of the depot, yet we fail to see how it was prejudicial to appellant.

[9] By another assignment the jury were told, in effect, that if the defendant's track at the place of the accident was not fenced, a verdict should be returned for the plaintiff, in the absence of a further finding that such place was within defendant's switch limits where the track was not required to be fenced. There was some testimony to the effect that the cattle were struck at a public road crossing. The instruction is possibly subject to the criticism that the jury might have been misled to exclude the defense that the cattle were struck on the public road crossing, and upon another trial the instruction should be so framed as to avoid that criticism.

[10] Another paragraph of the court's charge reads:

"In the event that the defendant was not required to fence its track at the place where said cattle were hit and killed, and crippled and wounded so that they had to be killed if they were, then you will find for the defendant, unless you further find that the agents and employés of the defendant failed to use, in operating defendant's train, such care as a person of ordinary prudence would have exercised under the same or like circumstances."

This instruction was too general in its terms, and would permit the jury to construe as negligence the failure of the operatives of the train to keep a lookout for cattle, and to ring the bell and blow the whistle in order to frighten them in the event of their presence, but before such presence was discovered, even though the accident happened at a place where the statute did not require the track to be fenced, and was erroneous for the reasons already given.

[11] There was no reversible error in refusing to give the defendant's requested instruction, to the effect that there was no evidence to show that the train was running at an excessive rate of speed at the time of the accident, since that issue was not submitted to the jury as a basis for recovery.

Our views on questions presented in other assignments are sufficiently indicated in the foregoing conclusions, and a further discussion thereof is unnecessary.

For the reasons indicated, the judgment is reversed, and the cause remanded.

---

⊸For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes